IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2006

**MELVIN COFER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Hardeman County**
**No. 6542    J. Weber McCraw, Judge**

**No. W2006-00631-CCA-R3-PC  - Filed September 25, 2007**

The petitioner, Melvin Cofer, was convicted of aggravated vehicular homicide and vehicular assault. As a result, the petitioner received concurrent sentences of twenty-one years and three years.   The petitioner's convictions and sentences were affirmed on direct appeal. See State v. Melvin Cofer, No. W2002-01984-CCA-R3-CD, 2003 WL 21729450, at *1 (Tenn. Crim. App., at Jackson, Jul. 25, 2003), perm. app. denied, (Tenn. Nov. 24, 2003).   Subsequently, the supreme court denied permission to appeal.  The petitioner filed a pro se petition for post-conviction relief alleging, on numerous grounds, ineffective assistance of counsel.  Counsel was appointed and several amended petitions were filed.  The petition was denied by the post-conviction court after a hearing.  This appeal followed.  Because the post-conviction court properly denied the petition, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Gary Antrican, District Public Defender, Covington, Tennessee, for the appellant, Melvin Cofer.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Joe Van Dyke, Assistant District Attorney General,for the appellee, State of Tennessee.

**OPINION**

The facts underlying the petitioner's conviction were presented on direct appeal by this Court as follows:

At approximately 2:15 a.m. on March 12, 2001, Trooper Tim Scott was dispatched to the scene of a single-vehicle accident on Carlins Road in Hardeman County. When he arrived some thirty-five minutes after the accident, he observed that emergency medical personnel were preparing to transport the female victim, later identified as Candice Main, by helicopter to a hospital in Jackson. The male victim, Jeff Taylor, was being transported by ambulance to Jackson General Hospital. A green Honda lay upside down on the edge of the roadway. According to Trooper Scott, the vehicle had "crossed over the center line, and the center of the roadway, and had rolled over into oncoming traffic." The defendant, who was the owner of the Honda, acknowledged that he had been driving when the accident occurred. Trooper Scott described the defendant's speech as slurred, his eyes as watery, and his gait as unsteady, and observed that one of his pupils was dilated. Trooper Scott also smelled alcohol on his breath. There was an unopened can of beer beside the defendant's vehicle.

After photographing the vehicle, Trooper Scott questioned the defendant, who admitted that he had been drinking earlier in the evening and had taken Xanax, and then placed him under arrest for DUI. The officer transported the defendant to Bolivar General Hospital for a blood alcohol test, which the defendant refused. Because of injuries he suffered in the accident, the defendant was hospitalized and was later taken to Jackson General Hospital. Trooper Scott was not present when the defendant's blood was drawn. It was his opinion that the defendant was intoxicated when the accident occurred.

Trooper Scott, who had only three months' experience at the time of the accident, had previously investigated approximately twenty accidents. This was the first accident he had investigated which involved a fatality. Trooper Scott conceded that he did not interview any of the bystanders who were at the scene that night and acknowledged that the defendant's slurred speech, watery eyes, dilated pupil, and unsteady gait could have been caused by injuries he received in the accident.

Denise Walder, the victim Taylor's fianceé, testified that she had last seen him at approximately midnight on the night of accident and did not see him again until he was taken to the hospital. Upon her arrival at the hospital, she learned that Taylor had been in a car accident and had died.

Candice Main, who had attended a cookout at a neighbor's house on the day before the accident, testified that both the defendant and Taylor were there. Both were drinking. During the course of the evening, Ms. Main and Taylor decided to persuade the defendant to leave the cookout in order to avoid an altercation. She recalled that when they left in the defendant's car, each of them was drinking beer. According to Ms. Main, Taylor drove initially but the defendant eventually took the wheel. When the defendant began driving at an excessive rate of speed and

swerving, she "begged [the defendant] to stop or let us out, or let somebody else drive." Ms. Main testified that she was pinned underneath the car when the defendant crashed. She recalled hearing Taylor talking but could not see him. The defendant ran for help. Just after a man and a woman pulled her from the car, she lost consciousness.

Ms. Main remained in the hospital for three weeks with injuries to her colon, pancreas and kidneys. All of her ribs were broken. She testified that "[i]t's not all [the defendant's] fault. He didn't want me to get in that car . . . I believe the pain [the defendant has] been through is enough."

Laura Kitchen, a medical laboratory technician at Bolivar General Hospital at the time of the accident, testified that the defendant's blood was drawn at the direction of the emergency room physician to test for blood alcohol content. Although she could not specifically recall taking the defendant's blood, Ms. Kitchen testified that it is her practice to clean the area with water rather than alcohol before drawing the sample. Testing established that the defendant's blood alcohol content was .217 milligrams per deciliter.

Robert Marshall, a forensic scientist with the Tennessee Bureau of Investigation testified that the defendant's medical records established that a serum blood alcohol test, rather than a whole blood alcohol test, was performed. Using a standard formula, Marshall determined that the defendant's whole blood alcohol level would have been .177 percent. Marshall testified that while alcohol in the body generally dissipates at a rate of .01 to.02 grams percent per hour, the alcohol content of blood kept in a sealed container would likely remain the same. The defendant's medical records indicated that he had taken the prescription medication Xanax, which, according to Marshall, should not be combined with alcohol. Marshall testified that the medical records established that the defendant refused blood alcohol testing by law enforcement and that the testing was conducted for medical purposes.

Billy Irvin, a volunteer with the rescue squad that responded to the accident, testified that while he is not a certified emergency medical technician, he was certified to render medical assistance at accident scenes with few limitations. Irvin, who arrived at the accident scene at 2:20 a.m., testified that it took approximately twenty minutes to extricate Taylor, who was pinned between the ground and the rear window, with the full weight of the vehicle on his back.

Mechanic Roger Province, who examined the vehicle several months after the accident, determined that "the right rear tire was flat. The right rear wheel is turned under, and . . . the left front fender and the left front wheel has damage where it hit the tree." Province stated that he observed asphalt inside the rim of the right rear tire,

indicating that it had dug into the roadway. He found that the tire had broken loose from the rim and the right rear suspension of the car was bent.

John Weaver, a paramedic with the Hardeman County Ambulance Service, testified that when he arrived at the scene of the accident, a number of bystanders were rocking the car in an attempt to lift it off of Taylor. According to Weaver, Taylor was lying on his stomach and was pinned under the car from his waist down. After directing the bystanders to step away from the vehicle, Weaver performed an assessment of Taylor's condition. Weaver noted that Taylor, who was conscious and able to speak, had a strong odor of alcohol on his breath. Initially, he did not detect any life-threatening injuries. After Taylor was removed from the vehicle, Weaver observed that "[i]n the lumbar area over the kidneys[,] which would be just above his belt line, there were two indent [a]tions in the back of the skin. They were approximately half an inch deep, guessing probably the size of a cigarette, one over each kidney." Although Taylor's skin was not broken, it was Weaver's opinion that the injuries were of a type that "could cause a lot of damage to the internal organs."

Although a helicopter was called to transport Taylor to Jackson General Hospital or to The Med in Memphis, a major weather front between Hardeman and Shelby Counties prevented air travel so that only one helicopter was available. When the helicopter arrived, Taylor was pinned under the vehicle and Ms. Main's condition had worsened so the decision was made to transport Ms. Main by air and Taylor by ambulance. Although the pilot of the helicopter agreed to return and meet the ambulance after dropping off Ms. Main, weather conditions would not permit him to do so. Taylor's condition deteriorated during the trip to Jackson General Hospital, which took approximately an hour.

Melvin Cofer, 2003 WL 21729450, at *1-3 (footnote omitted).

At the conclusion of the jury trial, the petitioner was convicted of aggravated vehicular homicide and vehicular assault. The trial court sentenced the petitioner to twenty-one years for the aggravated vehicular homicide conviction and three years for the vehicular assault conviction. The sentences were ordered to run concurrently. On direct appeal, the petitioner argued: (1) that the trial court erred by refusing to suppress the results of the blood alcohol test; (2) that the trial court erred by limiting defense counsel's questioning of potential jurors; (3) that the evidence was insufficient to support the aggravated vehicular homicide conviction; (4) that the trial court erred by refusing to qualify a defense witness as an expert; (5) that the state failed to establish a proper chain of custody prior to the admission of the results of the blood alcohol test; and (6) that the trial court erred by denying his request for special jury instructions. This Court upheld both the petitioner's convictions and sentences. Id. The petitioner's application for permission to appeal was denied on November 24, 2003.

-4-

## Post-Conviction Proceedings

The petitioner filed a pro se petition for post-conviction relief on June 29, 2004. The petitioner amended the pro se petition once to include more specific grounds for post-conviction relief. After counsel was appointed, the petition was again amended, narrowing the grounds on which the petitioner sought relief. The petitioner claimed that trial counsel was ineffective for: (1) failing to pursue a change of venue; (2) failing to interview witnesses; (3) failing to properly investigate the case; (4) failing to arrange for an expert witness concerning the cause of the accident; (5) failing to adequately investigate and pursue issues relating to the petitioner's blood sample; and (6) failing to zealously represent the petitioner during different phases of the trial.

## Evidence at the Post-Conviction Hearing

At the post-conviction hearing, the petitioner claimed that there was no testimony introduced at trial as to Mr. Taylor's cause of death. The petitioner stated that immediately after the wreck, he ran to two houses to get help and have someone call for emergency assistance. The petitioner testified that he asked trial counsel to meet with and interview these people as potential witnesses. According to the petitioner, trial counsel informed him that "they [the witnesses] didn't have nothing [sic] good to say about [him]." Further, the petitioner complained that trial counsel did not obtain an expert in accident reconstruction or blood analysis. The petitioner admitted that trial counsel secured a wrecker driver to testify, but complained because the trial court would not permit the driver to testify as an expert in accident reconstruction. The petitioner was also unhappy because trial counsel did not obtain a change of venue even after pre-trial publicity about the case.

The petitioner further testified that Trooper Scott was permitted to testify as an expert. The petitioner complained that trial counsel failed to object to Trooper Scott's categorization as an expert and that the trial court did not properly determine that Trooper Scott was an expert prior to allowing him to testify.

The petitioner was also dissatisfied with trial counsel's representation in that trial counsel did not attempt to argue at trial that the petitioner was not intoxicated.

On cross-examination, the petitioner agreed and admitted that the State introduced evidence of his intoxication at the time of the wreck. Further, the petitioner admitted that trial counsel questioned Trooper Scott with regard to how the typical characteristics of intoxication might mirror the typical characteristics or a person with a head injury. The petitioner also agreed that there was no testimony that any of the tires were deflated, as the petitioner suggested to trial counsel.

Trial counsel took the stand to rebut the petitioner's claims. According to trial counsel, she did not intend to have the wrecker driver testify as an expert regarding how the accident occurred. Trial counsel sent materials to an accident reconstructionist, who reported that he would not be able

to assist the petitioner because he believed that the Tennessee Highway Patrol had done an "excellent" job.

Trial counsel stated that she spoke with several paramedics and medical personnel in preparation for trial, who gave "alternative theories" of how Mr. Taylor sustained his fatal injuries. In the end, trial counsel relied on the testimony of the paramedics to support the theory that several of Mr. Taylor's injuries resulted from the rescue effort. By utilizing paramedics, trial counsel hoped to have the paramedics suggest alternative theories regarding the cause of death in the hope of raising a reasonable doubt in the minds of the jury.

Trial counsel also testified that she considered requesting a change in venue, but chose not to pursue it as she determined that it would not be successful. According to trial counsel, the petitioner agreed to this strategy.

As to Trooper Scott's testimony, trial counsel stated that she did not object to the testimony about the cause of the accident because there were details, specifically the testimony about the gouge marks in the road, that were helpful to the defense. Moreover, trial counsel remembered cross-examining Trooper Scott extensively on his observations and assessment of the scene. Trial counsel did not feel that Trooper Scott actually gave an opinion as to the cause of the accident, but that he reported the circumstances that he observed at the scene.

Trial counsel stated that she consulted a person trained in blood testing and intoxication prior to trial. Trial counsel admitted that she did not consult directly with anyone at the hospital where the petitioner's blood was drawn in preparation for cross-examination. However, trial counsel felt that the lab technician who drew the petitioner's blood testified clearly regarding the exact protocol that she employed.

Trial counsel remembered meeting with and discussing the case with the petitioner numerous times. During one of those meetings, the petitioner told trial counsel that he had taken Xanax on the day of the accident. Trial counsel could not remember what amount of the drug the petitioner took. Trial counsel also believed that her investigator spoke to all of the potential witnesses that were provided to her by the petitioner. Trial counsel recalled that all of the potential witnesses described the petitioner as intoxicated and she made a decision not to call any of those witnesses on the petitioner's behalf. Trial counsel did not recall the petitioner having a theory about an alternative cause of the accident, like one of the passenger's legs, causing the steering wheel to stick and become the ultimate cause of the wreck.

Trial counsel testified that she did not attack the indictment. After examining the indictment at the post-conviction hearing, trial counsel admitted that it alleged only a violation of Tennessee Code Annotated section 39-13-213, the vehicular homicide statute, but that the petitioner was convicted of aggravated vehicular homicide under Tennessee Code Annotated section 39-13-218.

Tony McMahan, a life-long friend of the petitioner, testified that the petitioner came to his trailer after the wreck to tell him about the accident and to get help for the injured passengers. Mr. McMahan claimed that he was the first witness on the scene. According to Mr. McMahan, no one ever talked to him about his observations at the scene, including trial counsel. Mr. McMahan stated that, in his opinion, the petitioner did not appear intoxicated.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In a written order, the post-conviction court denied the petition for post-conviction relief, determining that trial counsel was not ineffective. In that order, the post-conviction court made the following findings of fact and conclusions of law:

> The petitioner was indicted on DUI Per Se, Prior DUI, Aggravated Vehicular homicide: Intoxication and Vehicular Assault.
>
> On January 17, 2002, after a trial by jury, the defendant was found guilty of DUI, Aggravated Vehicular Homicide as a result of intoxication and Vehicular Assault.
>
> The facts of the case established that the defendant was the driver of a vehicle involved in a single vehicle accident which involved a fatality as well as critical injuries. While driving the vehicle, the defendant was intoxicated.
>
> The petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel . . . .
>
> **Hearing:** At the hearing on January 24, 2006, the petitioner presented the testimony of the defendant/petitioner, . . . and [trial counsel].
>
> **Ineffective Assistance of Counsel:**
>
> > . . . .
>
> Petitioner's main complaints appears [sic] to be that his attorney did not pursue or secure expert witnesses, did not permit the defendant to testify, did not pursue venue changes as well as other pretrial and trial strategies. In presenting his testimony at this hearing, the Court did not find the defendant to be credible. The defendant's recollection of the facts differed from those presented by [trial counsel], and those evidenced by the record. With regard to securing expert witnesses, [trial counsel] testified that an accident reconstructionist was consulted, but after investigation, the reconstructionist found that his investigative results would not support the theory presented by the defendant; therefore, expert testimony by an accident reconstructionist was not presented, and counsel determined that any testimony by such an expert would not be helpful.

-7-

With regard to the change of venue complaint, the testimony revealed that the accident was covered by the local media. However, the proof did not reveal that a change of venue could be sustained. Regardless, the proof indicates that the defendant, after consultation with counsel, agreed to proceed to trial in Hardeman County.

Lastly, the defendant raises the issue that the code section cited in the indictment was erroneous, and counsel was ineffective for not addressing this issue. Counsel for the defendant in his argument on this post-conviction presented statements as to the current codification of the vehicular homicide and aggravated vehicular homicide; yet no proof was presented as to the codificaiton in 2001 which was the year that the indictment was presented. Assuming arguendo for this post-conviction hearing that the codification contained in this indictment was incorrect, this Court considers this issue. Tennessee Code Annotated § 9-13-213, which is the current citation for vehicular assault rather that [sic] for aggravated vehicle [sic] homicide, was cited in the indictment. Although the indictment does give reference to TCA 39-13-213, the indictment clearly gave appropriate and sufficient charging words to support its charge of aggravated vehicular homicide. The defendant claims that failure to properly identify the numerical code section by the State should inure to his benefit. All of the parties proceeded with the charge of aggravated vehicular homicide, the issue was never raised by the defendant, and the requirements to sustain a conviction under aggravated vehicular homicide were met. This claim of the defendant fails. In this case there is no showing that the defendant was misled by this recitation. Furthermore, the alleged defect was ascertainable prior to trial, and the defendant did not raise any objection to the indictment. In such case, the alleged defect is waived. . . .

Further, when words of a charging instrument show the offense for which a person is charged, the erroneous recitation of a statute is mere surplusage and is not fatal to the charging instrument. State v. Bowers, 673 S.W.2d 887. Further, since there was no indication that the defendant was misled by the recitation of the wrong statute in the indictment which contained sufficient and appropriate charging words to allege aggravated vehicular homicide, such conviction should not be set aside.

Unless substantial rights of the defendant are affected by the variance between the indictment and the proof, the defendant suffers no harm, and variance does not prejudice defendant's substantial rights if [the] indictment sufficiently informs him of the charges so that he may prepare [a] defense and not be misled or surprised at trial. State v. Moss, 662 S.W.2d 590 (Tenn. 1984).

. . . .

The Court accredits the testimony of [trial counsel].

The Court finds that [trial counsel] provided adequate assistance; she met with the petitioner and discussed the case, including possible trial strategies.

Petitioner failed to show any material deficient performance by [trial counsel] or that he was prejudiced by his representation.

The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence.

## Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that the post-conviction court improperly determined that he received ineffective assistance of counsel at trial. Specifically, the petitioner argues that trial counsel's performance "not only fell below the norm expected of criminal defense lawyers, but actually resulted in a conviction of an offense for which appellant was never indicted." The State contends that because trial counsel's performance was not deficient and the petitioner failed to demonstrate prejudice, the judgment of the post-conviction court should be affirmed.

Failure to Hire Experts

The petitioner argues that trial counsel should have hired an expert, rather than rely on the testimony of the paramedic, to testify as to the cause of Mr. Taylor's death and should have called an accident reconstructionist to testify as to the cause of the wreck. Further, the petitioner claims that trial counsel should have hired a blood expert to testify regarding the amount of Xanax he had in his system, as well as how the amount of alcohol in his system would have physically affected him. The petitioner suggests that Mr. Taylor's injuries were sustained during the rescue effort rather than during the wreck. However, the petitioner did not provide the post-conviction court with evidence that he did not cause the accident, or that the crash was not the proximate cause of Mr. Taylor's death. Further, the petitioner failed to prove that even if Mr. Taylor's injuries were sustained during the rescue effort, as opposed to the wreck, the jury would have found him not guilty. Neither did the petitioner produce a blood expert at the post-conviction hearing. There was testimony at the post-conviction hearing that trial counsel spoke with an accident reconstructionist, who was unable to conclude anything favorable to the defense. Consequently, there is no indication that any potential experts would have benefitted the petitioner's defense at trial. See Black v. State, 794 S.W.2d 752, 758-59 (Tenn. Crim. App. 1990) (determining that where a petitioner contends that his or her trial counsel failed to present favorable witnesses in support of their defense, such witnesses must be presented at an evidentiary hearing, otherwise the petitioner is not entitled to relief). The record supports the post-conviction court's conclusion that trial counsel was not

deficient in this regard. Further, the petitioner has presented no proof that he was prejudiced by trial counsel's performance. This issue is without merit.

## Failure to Call Witnesses

Next, the petitioner claims that trial counsel was ineffective for failing to interview or call certain witnesses. In particular, the petitioner complains that trial counsel did not call Tony McMahan, one of the first people to arrive on the scene, as a witness. The petitioner suggests that Mr. McMahan could have testified that Mr. Taylor received his injuries as a result of the rescue effort. The petitioner also argues that Mr. McMahan would have testified that the petitioner was not drunk at the time of the accident. Ms. McMahan testified at the post-conviction hearing, but made no mention of how he thought the victim received his injuries. Further, while Mr. McMahan testified at the post-conviction hearing that the petitioner "didn't seem drunk" in his opinion, the jury was presented with overwhelming evidence of the petitioner's intoxication at trial, including the results of blood alcohol tests that showed the petitioner's blood alcohol level to be .177 percent.

The petitioner also complains that trial counsel failed to call a witness to testify as to the proper procedure for drawing blood. Trial counsel testified that she consulted a person as to proper procedure in preparation for cross-examination of the State's witness at trial. The petitioner did not present any witnesses at the post-conviction hearing that showed how such testimony at trial would have been beneficial. Again, the record supports the post-conviction court's conclusion that trial counsel was not deficient in this regard. Further, the petitioner has presented no proof that he was prejudiced by trial counsel's performance. This issue is without merit.

## Failure to Explore Alternate Theory as to Cause of Wreck

The petitioner alleges that trial counsel's performance was deficient because she did not explore an alternate theory as to the cause of the fatal wreck. The petitioner suggested at the post-conviction hearing that the wreck could have been caused by one of the passenger's legs hitting the steering wheel. Trial counsel testified that the petitioner never made her aware of this theory. In denying the petition, the trial court gave credibility to the testimony of trial counsel and specifically discredited the petitioner's testimony. As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The evidence does not preponderate against the post-conviction court's credibility determination herein. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective in failing to explore a theory that was never disclosed to her. This issue is without merit.

<u>Failure to Object to Trooper Scott's Testimony</u>

The petitioner complains that trial counsel failed to object to Trooper Scott's testimony regarding how the accident occurred because he was not qualified as an expert in accident reconstruction. Trial counsel testified at the post-conviction hearing that she did not object to Trooper Scott's testimony because there were details, such as the gouge marks in the road, that were helpful to the defense theory. Further, trial counsel testified that she chose to vigorously cross-examine Trooper Scott rather than object to his testimony in its entirety. Trial counsel actually stated that she did not believe Trooper Scott gave any opinions at all regarding how the accident occurred, but that he merely reported the circumstances that he observed at the scene. Thus, trial counsel testified that her decision was a tactical one. It is not this Court's function to "'second guess' tactical and strategic choices pertaining to defense matters or to measure a defense attorney's representation by '20-20 hindsight.'" <u>Henley</u>, 960 S.W.2d at 579 (quoting <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982)). The petitioner again failed to prove ineffective assistance of counsel by clear and convincing evidence. This issue is without merit.

<u>Failure to Object During Voir Dire</u>

In his brief, the petitioner claims that trial counsel should have objected when the prosecutor allegedly read a list of Hardeman County DUI victims to potential jurors during voir dire. While the trial record indicates that the prosecutor named several DUI victims during voir dire, it also indicates that the prosecutor listed the names in order to establish if any of the potential jurors knew anyone injured as a result of DUI. However, the petitioner failed to raise this allegation in any of his petitions for post-conviction relief and failed to raise this issue at the post-conviction hearing.

Ineffective assistance of counsel is a single claim for relief under the Post-Conviction Procedure Act even though the violation may be proved by multiple acts or omissions on the part of counsel. <u>Erika Louise Bunkley Patrick v. State</u>, No. W2004-02217-CCA-R3-PC, 2006 WL 211824, at *10 (Tenn. Crim. App., at Jackson, Jan. 24, 2006) (citing <u>Thompson v. State</u>, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997); <u>Cone v. State</u>, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995)). Thus, all factual allegations must be presented in one claim. <u>See</u> Tenn. Code Ann. § 40-30-106(d). A petitioner may not relitigate a claim of ineffective assistance of counsel "by presenting new and different factual allegations" on appeal. <u>Erika Louise Bunkley Patrick</u>, 2006 WL 211824, at *10 (citing <u>Thompson</u>, 958 S.W.2d at 161; <u>Roger Clayton Davis v. State</u>, No. 03C01-9902-CR-00076, 2000 WL 21307 (Tenn. Crim. App., at Knoxville, Jan. 14, 2000), <u>perm. app. denied</u>, (Tenn. Sept. 5, 2000)). It appears that the petitioner's additional factual allegation supporting his claim of ineffective assistance of counsel was not raised in his petition for post-conviction relief and was not in response to testimony developed at the evidentiary hearing. Furthermore, the post-conviction court did not make any findings of fact on the factual allegations the petitioner now raises. <u>Erika Louise Bunkley Patrick</u>, 2006 WL 211824, at *10 (citing Tenn. R. App. P. 36(a) (holding that no "relief may be granted in contravention of the province of the trier of fact.")). Consequently, this issue has been waived. <u>See</u> <u>Cone</u>, 747 S.W.2d at 357.

Failure to Object to Indictment

Finally, the petitioner complains that trial counsel failed to object to the indictment. Specifically, the petitioner alleges that according to the statue sections cited in the indictment, the indictment charged the petitioner with "DUI Per Se, Prior DUI, . . . Vehicular Homicide, and . . . Vehicular Assault." In other words, the petitioner argues that the indictment did not actually charge the petitioner with aggravated vehicular homicide, for which he was ultimately convicted, and that trial counsel was ineffective for failing to object to the indictment prior to trial.

At the outset, we note that this issue was not raised in the petitioner's petition for post-conviction relief. However, the issue was addressed at the post-conviction hearing and the post-conviction court made findings of fact and conclusions of law in regards to the issue, finding it to be without merit.

We have reviewed the indictment as it appears in the technical record from the petitioner's direct appeal.[1] Count three of the indictment alleges that the petitioner "did unlawfully, feloniously and recklessly kill Jeffrey Taylor by operation of an automobile, the killing of Jeffrey Taylor being the proximate result of [the petitioner's] intoxication as operator of said automobile, in violation of T.C.A. 39-13-213, . . . ." Aggravated vehicular homicide is found at Tennessee Code Annotated section 39-13-218 rather than -213. Tennessee Code Annotated section 39-13-218 states that aggravated vehicular homicide is vehicular homicide as defined in Tennessee Code Annotated section 39-13-213 where a defendant has two or more convictions for DUI. Tenn. Code Ann. § 39-13-218(a)(1)(A). Vehicular homicide is defined as the "reckless killing of another by the operation of an automobile . . . as the proximate result of the driver's intoxication." Tenn. Code Ann. § 39-13-213. In order to be convicted of aggravated vehicular homicide, "the indictment, in a separate count, shall specify, charge and give notice of the required prior conviction or convictions." Tenn. Code Ann. § 39-13-218(c). Count two of the indictment listed two prior DUI offenses committed by the petitioner.

As a general matter, "[t]he indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . ." Tenn. Code Ann. § 40-13-202. It is well-settled that an indictment must provide sufficient information: "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997).

---

[1] The State argues that the petitioner waived the issue for failure to prepare an adequate record by not including copies of the indictment. We have taken judicial notice of the technical record as presented on direct appeal in order to review the indictment.

Although the issue of whether counsel's failure to raise on objection to the sufficiency of the indictment is not alleged in the post-conviction petition, it was discussed by the post-conviction court in its determination of the issue of the effectiveness of counsel. The entire evidentiary record concerning this issue consists of the following colloquy at the post-conviction hearing between petitioner's post-conviction attorney and his trial counsel:

Q. 39-13-213, what offense does that define?
A. Vehicular homicide.
Q. Now, turn to the pages over here to 39-13-218, what does that allege?
A. Aggravated vehicular homicide.
Q. Anywhere on Count Three of the indictment does it specifically mention aggravated vehicular homicide or 39-13-218?
A. No, but this book is the most current and I don't know–
Q. I understand.
A. – in 2001 – it would have been 2001, I don't know if the Codes are the same.
Q. Of course, we don't have the notes so we don't know the year that –
A. Right.
Q. If the codes are the same, then it's two different offenses; is that correct:
A. If the Codes are the same.
Q. Okay.
A. Any I'd have to look in my book to see –
Q. And you agree according to what we have here today that the indictment is for 39-13-213, vehicular homicide, not for 39-13-218, aggravated homicide.
A. Yes.
Q. One other thing I'll ask you. You read it. Does this indictment allege that he had prior DUIs, as a separate –
A. Yes. I think in Count Two, doesn't it?
Q. No, I'm not talking about that. I'll ask you when you look at it.
A. Okay.

Based on this extremely limited discussion of counsel's understanding of the indictment, the reasons for her action or inaction with respect to it, and the absence of any record before us as to what transpired at the bifurcated portion of the proceedings wherein the status of the indictment might

-14-

have changed, we find that the petitioner has failed to carry his burden of proof that counsel was ineffective in not objecting to the sufficiency of the indictment.[2]

It does appear that the indictment in this case, as it appears in the record of the direct appeal presently before this court, does not contain a count alleging *aggravated* vehicular homicide. A valid indictment is an essential jurisdictional element to the procurement of a valid conviction. *Wyatt v. State*, 24 S.W.3d 319, 323 (Tenn. 2000). In the absence of a complete record of what transpired at trial we are unable to determine whether the indictment was ever amended either explicitly or implicitly before proceeding to the portion of the proceeding wherein the conviction for *aggravated* vehicular homicide occurred. *See State v. Yorick*, 133 S.W.3d 606, 613 (Tenn. 2004); (holding in the absence of transcripts of all relevant portions of the record, plain error review of validity of indictments was error because record unclear). Of course, the petitioner may be entitled to relief on this issue in a properly pleaded and filed habeas corpus proceeding wherein the question of the sufficiency of the indictment can be fully litigated. *Id.* Such a proceeding should be instituted pursuant to T.C.A. § 29-21-101, *et seq*., and should be pled in accordance with the provisions of that title and chapter, including attachments demonstrating that the petitioner's conviction is void. *See Summers v. State*, 212 S.W.3d 251, 261 (Tenn. 2007).

Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

---

[2]The briefs of the parties reference a bifurcated portion of the proceedings wherein apparently the question of whether the petitioner's vehicular homicide conviction should be elevated to aggravated status was determined. However, there is no technical record or transcript of that portion of the proceeding in either the direct appeal record or the post-conviction record.